UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATHANIEL BROUSSARD, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO: 4:21-cv-00891 |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff Nathaniel Broussard ("Broussard") seeks judicial review of an administrative decision denying his application for disability benefits under Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Broussard and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 19 and 23. After reviewing the briefing, the record, and the applicable law, Broussard's motion for summary judgment is **GRANTED**, and the Commissioner's motion for summary judgment is **DENIED**.

## BACKGROUND

Broussard filed applications for supplemental security income in October 2018, alleging disability beginning on January 1, 2013. His application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Broussard was not disabled. Broussard filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). Courts reviewing the Commissioner's denial of social security disability

applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ

considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id*.

## THE ALJ'S DECISION

The ALJ found at Step 1 that Broussard "has not engaged in substantial gainful activity since October 31, 2018, the application date" Dkt. 13-4 at 7.

The ALJ found at Step 2 that Broussard suffered from "the following severe impairments: degenerative disc disease; depression; schizoaffective disorder, bipolar type; antisocial personality disorder; anxiety; seizures; arthritic changes in the left wrist (in the setting of scaphoid nonunion); callous formation of the 5th metacarpal in the right hand; arthritic changes of the right knee; and acute kidney injury." *Id*.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Broussard's RFC as follows:

> [T]he the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently handle items with the left hand; can frequently handle items with the right hand; can frequently finger with the left hand; can frequently finger with the right hand; can frequently feel on the left; can frequently feel on the right; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can never work at unprotected heights; can never work with moving mechanical parts; can never operate a motor vehicle; can never work in extreme heat; is able to perform simple, routine, and repetitive tasks; is able to perform simple work-related decisions; is able to tolerate few changes in a routine work setting, defined as performing the same duties at the same station or location day to day; can have occasional interaction with supervisors; can have occasional contact with co-workers with no

tandem tasks or team-type activities; and can have no contact with the public.

*Id.* at 11.

At Step 4, the ALJ found that Broussard "has no past relevant work" *Id.* at 17. At Step 5, considering Broussard's age, education, work experience, RFC, and the testimony of the vocational expert, the ALJ concluded that Broussard was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 18. Consequently, the ALJ determined that Broussard was not disabled.

## DISCUSSION

This social security appeal raises three issues. First, Broussard argues that the ALJ erred at Step 2 by failing to recognize all his severe impairments. Next, at Step 3, Broussard argues that the ALJ incorrectly assessed whether his mental impairments met or equaled a listed impairment. Last, at Step 5, Broussard contends that the ALJ failed to resolve inconsistencies between the RFC and the vocational expert's testimony. Because I find the second issue implicating the ALJ's Step 3 determination dispositive, I do not reach the other issues.

### A.   THE STEP 3 STANDARD

At Step 3 of the sequential analysis, the ALJ must determine whether a claimant's severe impairment meets or medically equals one of the listings found in the regulation known as Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis omitted). If a claimant meets this burden, he is disabled.

I now turn to the listings at issue in this case.

**B.  LISTINGS 12.03, 12.04, 12.06, 12.08**

At issue here are the following four listings: (i) 12.03 for schizophrenia spectrum and other psychotic disorders; (ii) 12.04 for depressive, bipolar, and related disorders; (iii) 12.06 for anxiety and obsessive-compulsive disorders; and (iv) 12.08 for personality and impulse-control disorders. *See* Dkt. 13-4 at 8. *See also* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03, 12.04, 12.06, 12.08.

From a thirty-thousand-foot view, the above-mentioned listings function as follows. Listings 12.03, 12.04, and 12.06 each contain three paragraphs—A, B, and C. *See id.* §§ 12.03, 12.04, 12.06. To satisfy any of these listings—12.03, 12.04, or 12.06—a claimant must satisfy paragraphs "A and B, or A and C." *See id.* Listing 12.08 only contains paragraphs A and B, and both must be satisfied to meet the listing. *See id.* § 12.08. To quickly recap, a claimant must satisfy paragraph A in addition to satisfying either paragraph B (all four listing) or paragraph C (listings 12.03, 12.04, and 12.06).

"Paragraph A of each listing . . . includes the medical criteria that must be present in [Broussard's] medical evidence." *Id.* § 12.00(A)(2)(a). Paragraph B of each listing provides the functional criteria and a rating scale to evaluate how Broussard's mental disorders limit his functioning. *See id.* §§ 12.03(B), 12.04(B), 12.06(B), 12.08(B). Specifically, paragraph B tasks the ALJ with deciding whether Broussard has one "extreme" limitation or two or more "marked" limitations of the four areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *See id.* Paragraph C of listings 12.03, 12.04, and 12.06 provides the criteria used to evaluate serious and persistent mental disorders. To satisfy the paragraph C criteria, there must be a medically documented history of the disorder over a period of at least two years and evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that

diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*Id.* §§ 12.03(C), 12.04(C), 12.06(C).

With this preliminary regulatory information out of the way, I turn to the ALJ's reasoning.

### C.  THE ALJ'S REASONING

The ALJ found that Broussard did not meet any of the listings. In deciding that Broussard did not meet these listings, the ALJ did not address the paragraph A criteria. *See* Dkt. 13-4 at 8–11. Instead, the ALJ opted to dig into the paragraph B criteria, deciding that "[b]ecause [Broussard's] mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." *Id.* at 10. This determination defeated listing 12.08, s*ee* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.08 (requiring the claimant satisfy both paragraphs A and B), and left only one path for Broussard to meet listings 12.03, 12.04, or 12.06—he had to satisfy the requirements of paragraphs A and C. *See id.* §§ 12.03, 12.04, 12.06. Understanding this, the ALJ then cursorily addressed paragraph C: "In this case, the evidence fails to establish the presence of the 'paragraph C' criteria. A January 4, 2019 [medical] record indicated that the claimant is able to complete activities of daily living independently." Dkt. 13-4 at 10.

### D.  BROUSSARD'S ARGUMENT

Broussard does not contest the ALJ's determination with respect to the paragraph B criteria. *See* Dkt. 19 at 7. Instead, Broussard argues that his

impairments satisfy the requirements of paragraphs A and C of listings 12.03, 12.04, or 12.06.[2] *See id.*

**Paragraph A.** In this Court, Broussard does not attempt to *demonstrate* that he satisfies the requirements of paragraph A. *See id.* Instead, he seemingly relies on the fact that the ALJ's findings do "not deny that the paragraph A criteria of any of the four identified and considered mental listings is met or equaled." *Id.* While this is obviously not good enough, it is clear to me that the administrative record contains medical evidence that arguably supports paragraph A for at least listing 12.03. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03(A) (requiring medical documentation of delusions or hallucinations); Dkt. 13-4 at 9 (ALJ discussing a medical record memorializing "hallucinations and delusions"). Thus, Broussard arguably satisfies paragraph A under one of the advocated-for listings.[3]

**Paragraph C.** As explained above, paragraph C consists of two subparts. The first subpart is satisfied if a claimant provides evidence that he is receiving ongoing medical treatment that diminishes the symptoms and signs of his mental disorder. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03(C)(1), 12.04(C)(1), 12.06(C)(1). Although the ALJ did not discuss this subpart, the administrative record catalogues Broussard's extensive ongoing treatment history. Thus, the first subpart seems to be satisfied.

Under the second subpart of paragraph C, Broussard had to produce evidence that he has a "minimal capacity to adapt to changes in [his] environment or to demands that *are not already part* of [his] daily life." *See id.* §§ 12.03(C)(2), 12.04(C)(2), 12.06(C)(2) (emphases added). The ALJ found that Broussard did not

---

[2] To the extent Broussard believes that listing 12.08 contains a paragraph C, he is mistaken.

[3] I use the word "arguably" to ensure that the ALJ's hand are not tied on remand. Moreover, I deliberately do not address listings 12.04 or 12.06 because I want the ALJ to have a clean slate. To be clear, while I ultimately conclude that remand is appropriate, I am not opining how the ALJ should view the evidence on remand.

meet this requirement because "[a] January 4, 2019 record indicated that [he] is able to complete activities of daily living independently." Dkt. 13-4 at 10. This one sentence analysis is problematic for two reasons. First, in my view, the lone record referenced does not address Broussard's capacity to adapt to changes or demands that *are not already part of his daily life*. Second—and much more damning—the ALJ's RFC determination seems to speak directly to the issue: "[Broussard] is able to tolerate few changes in a routine work setting, defined as performing the same duties at the same station or location day to day." *Id.* at 11. This language, which presumptively is supported by the medical evidence, suggests that Broussard has minimal capacity to adapt to changes or demands that are not already part of his daily life. In other words, it seems Broussard may have produced evidence that would satisfy subpart two of paragraph C.

***

Given that the ALJ did not discuss paragraph A or fully discuss paragraph C, I think the prudent thing to do is send this back to the ALJ to flesh out the decision more thoroughly. And because the record before me appears to demonstrate that Broussard meets a listing, remand is appropriate. *See Villarreal v. Comm'r of Soc. Sec.*, No. EP-17-CV-00288-ATB, 2018 WL 1833002, at *4 (W.D. Tex. Apr. 16, 2018) ("an error at step three requires reversal only where a plaintiff meets, or appears to meet, a listing").

## CONCLUSION

For the reasons provided above, Broussard's motion for summary judgment (Dkt. 19) is **GRANTED**, and the Commissioner's motion for summary judgment (Dkt. 23) is **DENIED**.

SIGNED this 1st day of June 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

8